UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GALLAGHER, | No. C-11-01293-DMR |
| Plaintiff(s), | **ORDER GRANTING MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION** |
| v. | |
| SHERMAN & FELLER, | |
| Defendant(s). | |

Plaintiffs Michael Gallagher, Mecar Metal, Inc., Michel Pitre, Rosemex, Inc., Rosemex Lab-Vent, Inc., and Autoenergie, Inc., ("Plaintiffs") along with Defendants Sherman & Feller and Ray Sherman, Jr., ("Defendants"; together with Plaintiffs, "the Parties") move the court pursuant to California Civil Procedure Code § 877.6[1] for a good faith settlement determination of the agreement that they reached in private mediation. (*See* Parties' Mem. of P. & A. in Supp. of Joint Mot. for Good Faith Settlement Determination ("Parties' Mot.") 1-2.) No parties oppose the motion. Because the court finds this motion suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), the December 22, 2011 hearing is vacated. For the reasons below, the court grants the motion.

**I. Background and Procedural History**

---

[1] Because this court's subject matter jurisdiction lies in diversity, California substantive law applies to state law claims. *In re Larry's Apartment, LLC*, 249 F.3d 832, 837 (9th Cir. 2001).

**A. The Underlying Case**

The underlying action -- *ACCO Engineered Systems, Inc. v. McCarthy Building Co.* ("Underlying Action") -- was a product liability case arising from valves installed in 2003 in the ventilation system for the University of California at San Francisco's Parnassus Services Seismic Replacement Building ("Project"). For the purchase price of $265,000, Tek-Air Systems, Inc. ("Tek-Air") bought specialized valves from Rosemex Lab-Vent. Tek-Air then supplied these valves to ACCO Engineered Systems, Inc. ("ACCO") for installation in June 2003 at the University of California's Parnassus facility. Some time thereafter, Rosemex Lab-Vent furnished a document entitled "Limitations of Warranty and Liability" ("Warranty") to Tek-Air. The Warranty stated that Tek-Air's exclusive remedy was the return of the valves for calibration, repair, or replacement and that Rosemex Lab-Vent was not liable for any special, consequential, or incidental damages. Tek-Air disputed that it had received this document or had agreed to such a damages limitation prior to the consummation of the purchase with Rosemex Lab-Vent.

On October 11, 2005, ACCO commenced the Underlying Action in the San Francisco Superior Court against a number of parties involved in the Project, including Tek-Air. The gravamen of the action as applied to Tek-Air alleged that Rosemex Lab-Vent's valves did not meet the Project's air-flow specifications, resulting in costly delays and unforeseen expenses. Two months later, Tek-Air filed a cross-complaint against Rosemex and Rosemex Lab-Vent, both domiciled in Quebec, for breach of express warranty, breach of written contract, breach of oral contract, fraud, negligent misrepresentation, unfair business practice, declaratory relief, express indemnity, and implied indemnity. On December 18, 2006, Rosemex and Rosemex Lab-Vent filed their answer, thereby submitting to California's jurisdiction.

On March 14, 2008, Defendants substituted in as counsel for Rosemex and Rosemex Lab-Vent in the Underlying Action. Around a month later, Gallagher and Pitre executed a retainer agreement with Defendants. During December 2008, ACCO and Tek-Air reached a settlement whereby Tek-Air paid ACCO the sum of $1.05 million, which the parties understand Tek-Air paid.

**1. Tek-Air's First Amended Cross-Complaint**

In early January 2009, Gallagher and Pitre were deposed as the persons most knowledgeable of Rosemex and Rosemex Lab-Vent, respectively. On January 29, pursuant to stipulation, Tek-Air obtained leave of court to file a first amended cross-complaint in which Tek-Air added Gallagher, Pitre, Mecar Metal, and Autoenergie, also domiciled in Canada, as cross-defendants, based on the assertion that all such entities and individuals were "alter egos" of each other and constituted a joint enterprise. Tek-Air sought more than $3 million in damages in its cross-complaint. On March 30, 2009, pursuant to California's long-arm statute, Tek-Air served, via registered mail, Gallagher, Pitre, Mecar Metal, and Autoenergie in Canada with the summons and first amended cross-complaint.

In late May, because Gallagher and Pitre agreed that Sherman and his firm would represent all said parties, Defendants sent Gallagher and Pitre a letter disclosing potential conflicts of interest and seeking their agreement, on behalf of themselves and their companies, to joint representation. Neither Gallagher nor Pitre executed these documents. Early the following month, Defendants filed a demurrer to Tek-Air's first amended cross-complaint on uncertainty. The day before the hearing, June 25, 2009, the court granted Tek-Air *ex parte* relief and granted leave to file a second amended cross-complaint, which effectively took Plaintiffs' demurrer to the first amended complaint off-calendar.

On July 30, 2009, Sherman filed a demurrer to and motion to strike portions of Tek-Air's second amended cross-complaint. Again, Plaintiffs contested the sufficiency of Tek-Air's alter ego allegations. On August 27, 2009, the court overruled the demurrer and denied the motion to strike, finding Tek-Air had adequately plead that Plaintiffs were all alter egos of each other.

On September 21, 2009, John Hursh, Esq. of Dorsey & Whitney, LLP formally substituted in as counsel for Gallagher, Mecar Metal, and Rosemex, leaving Defendants as counsel for Pitre, Rosemex Lab-Vent, and Autoenergie. Two days later, Pitre executed a formal retainer agreement with Defendants on behalf of himself, Rosemex Lab-Vent, and Autoenergie.

On November 24, 2009, as a result of non-payment of substantial legal fees and costs incurred, Defendants filed an unopposed motion to withdrawal as attorney of record, which the court granted on December 22, 2009. Two days later, Andrew Holland, Esq. of Thoits, Love, Hershberger

3

& McLean substituted in as counsel for Pitre and Autoenergie, and on January 14, 2009, Yesenia Santacruz, Esq. of EFP Law Group substituted in as counsel for Rosemex Lab-Vent.

### 2. Plaintiffs' Dispositive Motions and Settlement

In December 2009 and January 2010, respectively, Rosemex, Mecar Metal, and Autoenergie filed motions for summary judgment/summary adjudication contending that they had no contractual relationship with Tek-Air, had made no representations to Tek-Air concerning the subject valves, and were not the alter ego of any of the other entity Plaintiffs, all of which, they claimed, were adequately capitalized and observed requisite corporate formalities. During those same months, Gallagher and Pitre also filed motions for summary judgment/summary adjudication, each claiming he was not the alter ego of any of the entity Plaintiffs. Rosemex Lab-Vent did not file a motion for summary judgment.

On March 12 and 16, 2010, Tek-Air filed oppositions to the various dispositive motions, arguing that (1) Plaintiffs had, in fact, misrepresented that the valves would meet the required specifications; (2) the companies were all part of a joint venture and joint enterprise, and therefore jointly and severally liable for claims against Rosemex Lab-Vent, which was a "shell" of Gallagher, Pitre, and their other businesses; and (3) Plaintiffs were alter egos of each other.

Early the next month, the court denied the dispositive motions, ruling as follows: (1) the moving parties had failed to meet the burden of showing that the alter ego claims lacked merit; and (2) as an independent basis for denying the motions, under California Code of Civil Procedure § 437c(h), facts essential to justify opposition might exist but could not be presented because discovery regarding those facts had not been completed.

Three weeks later, Tek-Air filed a notice of settlement of the entire case. As part of the settlement, Rosemex Lab-Vent, Gallagher, and Pitre, jointly and severally, agreed to pay Tek-Air $400,000, which, under the terms of the Warranty, represented in part the original cost of the valves, the cost of the return of the valves, and a portion of the legal fees that Tek-Air had incurred in its defense of the ACCO claims. As a part of the compromise, Rosemex Lab-Vent also agreed to abandon its counterclaim for $100,000 allegedly owed to it by Tek-Air. All parties were released and discharged from future claims, and the court dismissed the action with prejudice.

**B. The Present Action**

On February 10, 2011, Plaintiffs filed their first amended complaint for professional negligence against Defendants and Does 1-50[2] in the Alameda County Superior Court; they did not specify their alleged damages. Plaintiffs alleged that Defendants had committed legal malpractice and departed from the applicable standard of care by, *inter alia*, (1) failing to contest personal jurisdiction in the Underlying Action and (2) failing to advise of potential or actual conflicts of interest. Plaintiffs have since posited the theory that Defendants also breached the standard of care by not presenting the Warranty as a defense and/or to limit their damages.

On March 17, 2011, Defendants removed this action to this Court based on diversity jurisdiction. Sherman & Feller also filed a counterclaim against certain plaintiffs for unpaid legal fees and costs worth $52,884.28 plus interest.

On November 29, 2011, pursuant to court order, the Parties participated in a private mediation, during which the parties resolved this matter. In the Parties' release, they agreed: "The parties agree that their settlement in this manner was made in good faith and was the product of arms-length negotiations subject to the involvement of an experienced mediator." (Brod Decl. ¶ 5, Dec. 9, 2011; Evans Decl. ¶ 15, Dec. 9, 2011.) The release also states: "Plaintiffs agree and represent that [Defendants'] settlement payment and waiver of its counter-claims represent fairly and reasonably [Defendants] proportionate share of responsibility for the damages sought by Plaintiffs herein and otherwise satisfy and comply with all factors identified by the California Supreme Court in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* . . . to constitute a 'good faith settlement.'" (Brod Decl. ¶ 5 (internal citation omitted); Evans Decl. ¶ 15 (internal citation omitted).) The Agreement requires the Parties to jointly request determination and entry of an order by this court that the settlement is in good faith in accordance with the provisions of § 877.6. (Brod Decl. ¶ 5; Evans Decl. ¶ 15.)

---

[2] With reference to their original allegations as to fictitious defendants, Does 1-50, Plaintiffs alleged that they were ignorant of the true names and capacities of Defendants by such fictitious names; would amend their complaint to allege their true names and capacities when ascertained; and were informed and believed, and thereon alleged, that each of the Does was legally responsible in some manner for the alleged occurrences and proximately caused Plaintiffs' damages.

5

The court reviewed the confidential settlement agreement *in camera*. In the settlement agreement, Defendants agreed to pay Plaintiffs a confidential amount of money in return for Plaintiffs' release and dismissal with prejudice of all claims against Defendants and Defendants' agreement to dismiss with prejudice their counterclaims, including all claims for unpaid legal fees and costs in the amount of $52,884.28. (Brod Decl. ¶ 6; Evans Decl. ¶ 16.) The Parties agree that this settlement amount "represent[s] a material portion of Plaintiffs' intial demand at the mediation" and "a material portion of Plaintiffs' $500,000 settlement with Tek-Air in the Underlying Action." (Parties' Mot. 9.) They therefore assert that "the settlement amount [is] in a reasonable range/within the ballpark of Defendants' alleged proportionate liability as required by *Tech-Bilt, Inc.* and [is], therefore, in good faith." (Parties' Mot. 9 (quotation marks omitted).)

## II. Applicable Law

Pursuant to section 877.6 of the California Code of Civil Procedure, "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligoars." Cal. Civ. P. Code § 877.6(a). If a court approves the settlement, the determination will bar "any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." *Id.* § 877.6(c).

In the examination of such settlement, a court may examine "affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing." *Id.* § 877.6(b). The Supreme Court of California has set forth factors a court should consider when rendering its determination:

> [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery[,] the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, . . . a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. . . . , the financial conditions and insurance policy limits of settling defendants, [and] . . . the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. . . . [A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would

estimate the settling defendant's liability to be. The party asserting the lack of good faith, who has the burden of proof on that issue . . . , should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a "settlement made in good faith" within the terms of section 877.6.

*Fed. Savings & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 514 (9th Cir. 1990) (quoting *Tech-Bilt, Inc. v. Woodward-Clude & Assocs.*, 38 Cal. 3d 488, 499-500 (1985) (internal citations and quotation marks omitted)). However, when no party objects to the proposed settlement, the court may bypass these factors and enter a finding of good faith when presented merely with "the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case." *City of Grand Terrace v. Superior Court of San Bernardino Cnty.*, 192 Cal. App. 3d 1251, 1261 (1987); *accord Hernandez v. Sutter Med. Ctr. of Santa Rosa*, No. 06-3350, 2009 WL 322937, at *3 (N.D. Cal. Feb. 9, 2009); *Bonds v. Nicoletti Oil Inc.*, No. 07-1600, 2008 WL 4104272, at *5 (E.D. Cal. Sept. 3, 2008).

### III. Discussion and Conclusion

No party opposes the proposed settlement or the present motion, and the Parties have submitted a motion setting forth the ground of good faith and a declaration providing background to the case. (*See* Parties' Mot. 9-10; Brod Decl. ¶ 5; Evans Decl. ¶¶ 15-16. *See generally* Brod Decl.; Evans Decl.) The court independently reviewed the confidential settlement agreement *in camera* and is satisfied that it is the product of arms-length negotiation before an experienced mediator and represents a good faith settlement between the parties. The court consequently grants the Parties' Joint Motion for Good Faith Settlement.

IT IS SO ORDERED.

Dated: December 19, 2011



DONNA M. RYU
United States Magistrate Judge

7